IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN R. WALKER and JOYCE FORMBY, h/w, | : : : | Civil No. 1:17-CV-2142 |
| Plaintiffs, | : : | |
| v. | : : | |
| MONACACY VALLEY ELECTRIC, INC., | : : : : | |
| Defendant. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is the motion for summary judgment (Doc. 18) filed by Defendant Monacacy Valley Electric, Inc. ("Defendant" or "Monacacy"), seeking dismissal of the wrongful termination claim (Doc. 1) brought by Plaintiff Calvin Walker ("Mr. Walker" or "Plaintiff").[1] For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

## **I. Background[2]**

The court begins by examining the record in the light most favorable to the nonmovant, Plaintiff. Mr. Walker is a master electrician and project superintendent

---

[1] Mr. Walker's wife, Joyce Formby ("Ms. Formby"), was a previous plaintiff in this case, but the court dismissed her claim on 12(b)(6). She has nonetheless given deposition testimony in this case to which the court will refer.

[2] Plaintiff originally submitted partly-illegible deposition transcript excerpts from Mr. Walker's deposition. The court then contacted the parties and instructed Plaintiff to replace the illegible transcript but "not provide any additional pages beyond what has already been filed, so the record will not be supplemented at all, simply corrected in format." In response, Plaintiff

1

by trade. He previously worked for Monacacy in this capacity, with his average daily work requiring him to climb ladders, work on lifts and scaffolding, lift materials exceeding twenty pounds, and perform work over his head.

On November 23, 2015, Mr. Walker was performing work on a ladder when he fell and suffered significant injuries.[3] As a result, Mr. Walker sought medical care and acquired an occupational evaluation from his physician. On December 3, 2015, Mr. Walker discussed his fall with Brian Smith ("Mr. Smith"), one of Monacacy's co-owners, and stated that he was in too much pain to work. Mr. Smith told Mr. Walker he understood and to "take as much time as you need." Mr. Walker never reported back for work.

On December 4, 2015, Mr. Walker participated in a meeting with Monacacy's co-owners, Mr. Smith, Larry Smith ("Larry"), and Mr. Wantz (collectively, the "Co-owners"). During the meeting, the Co-owners appeared to make conflicting statements. In response to Mr. Walker telling the group he intended to file a workers' compensation claim, Mr. Wantz "got kind of a little irate and made some statements," including that Mr. Walker "was more of a liability to the company than . . . an asset." (Doc. 22-1, 96:2-16.) Mr. Smith and Larry, however, told Mr. Wantz

---

promptly filed the full deposition transcript instead of the previous excerpts. The court only reviewed the clearer version of the deposition transcript on the pages previously submitted.

[3] There is conflicting evidence as to whether the fall caused Mr. Walker's injuries or merely exacerbated pre-existing problems.

"you need to watch your mouth and not say what you're saying," and that they needed to wait and see what Mr. Walker's doctor said before making any such decision. (*Id.*)

A previous discussion between Mr. Walker's wife and Mr. Wantz provides context for how Mr. Walker interpreted the statements at the meeting. Approximately two years before this injury, Mr. Walker suffered a separate workplace injury while employed by Monacacy. While driving to Chambersburg Hospital, Mr. Walker had to pull over and call an ambulance to aid him in reaching the facility. Mr. Walker then told his wife to contact Mr. Wantz and inform him of what happened. After informing Mr. Wantz of Mr. Walker's injuries, Mr. Wantz:

> right away was like what are you talking about, I can't afford - - I can't afford this. He says another person with workman's comp, he says, you know, I'm just going to have to lay him off, I'm just going to have to lay him off. I'm, like, begging with him. I'm like you can't just lay - - you know, just lay him off. I mean he needs a job. I mean like I told you we were just getting out of a financial situation. And he's like, well, you know, it's ridiculous, you know, these people. . . . It was just like he - - if we did a workman's comp case that day, that - - if we did that, then he was going to be - - he was going to be fired.

(Doc. 22-2, 30:9-25.) In light of this history, Mr. Walker believed Mr. Wantz's comments during the December 4, 2015, meeting meant the company intended to fire him if he filed for workers' compensation.

3

On December 14, 2015, Mr. Walker saw a physician by the name of Dr. Adourian. Two days later, Dr. Adourian notified Defendant's workers' compensation carrier, Federated Insurance, that Mr. Walker was too physically impaired to work. Eight days later, Mr. Walker filed a claim petition for workers' compensation benefits with Federated Insurance. The insurer denied his claim, resulting in the claim being litigated through the Department of Labor and Industry Bureau of Workers' Compensation.[4] Mr. Walker has also applied for and received short-term disability benefits.

Over the next few months, Mr. Walker began contacting The Contractor's Plan, a third-party Monacacy had hired to handle employee benefits. The Contractors Plan initially informed Mr. Walker he was unable to request an early withdrawal of any retirement benefits because his employment with Defendant did not appear to have ended. In April of 2016, Mr. Walker contacted The Contractor's Plan again, resulting in it sending him a "Distribution Request and Election Form." Mr. Walker filled the form out and stated he had been "terminated from employment with the employer named on this form and not been rehired."

The Contractor's Plan subsequently contacted Monacacy's human resources ("HR") department, requesting that it verify the date of Mr. Walker's termination or

---

[4] At the time briefing was completed, the parties agreed that the workers' compensation claim was still being disputed. Neither party has informed the court of any updates to the litigation's process, nor have they requested the court take judicial notice of it.

reply with "DENIED – STILL EMPLOYED." (Doc. 18-5, p. 19 of 29.) Monacacy replied: "Termination: last day at [Monacacy] 12/05/15." (Doc. 18-4, pp. 60-61 of 63.) The Contractor's Plan then sent Mr. Walker a Retirement Plan Account Statement that noted: "Date of Termination 12/5/2015." (Doc. 22-5, p. 24/29.) Defendant then notified its short-term disability insurer, Companion Life, that Mr. Walker was no longer employed with it.[5]

In early 2016, Mr. Walker underwent surgery for his injuries. In August of 2017, Mr. Walker's physician, Dr. Mark Knaub, stated that Mr. Walker's level of recovery suggested he was only able to perform "light work" that did not require him to lift twenty pounds over his head or work on a ladder. It is unclear if this accurately describes Mr. Walker's capabilities today. On the one hand, Mr. Walker testified at deposition that he did not feel that he could work in any capacity. On the other hand, he stated he has the ability to perform some administrative work if he was permitted to stay at a desk and not perform any regular physical labor. Either way, Mr. Walker admitted that he did not request such light work from Monacacy, nor has he spoken to any Monacacy personnel since the December 4, 2015, meeting or applied for any new work.

---

[5] Defendant has presented evidence suggesting the letter was not an official indication of Mr. Walker being terminated and that it never sent Mr. Walker any direct statement of termination.

5

On November 21, 2017, Mr. Walker and his wife sued Defendant for wrongful termination in violation of public policy, alleging Defendant fired Walker in retaliation for him filing for workers' compensation. (Doc. 1.) Defendant then filed a 12(b)(6) motion to dismiss both parties' claims for punitive damages and Ms. Formby's claims in their entirety. (Docs. 6-7.) The parties proceeded to fully brief the motion to dismiss, conduct discovery, then fully brief summary judgment as well. (Docs. 18, 23-24, 28 (summary judgment briefing)). The court granted Defendant's motion to dismiss in part, dismissing Ms. Formby's claims in their entirety but denying the motion regarding punitive damages. (Docs. 29-30.) This rendered moot part of Defendant's motion for summary judgment concerning Formby's claims. The remainder of Defendant's motion for summary judgment is ripe for review.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable fact finder to return a verdict for the non-moving party.

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a

preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. Discussion

Plaintiff's sole cause of action in this case is a wrongful discharge claim in violation of public policy, alleging Defendant terminated him for filing for workers' compensation. "[F]ederal courts which have addressed the issue have overwhelmingly held that Pennsylvania recognizes wrongful discharge actions where an employee has been terminated allegedly in retaliation for filing a claim for [worker's] compensation benefits." *Burns v. United Parcel Serv., Inc.*, 757 F. Supp. 518, 522 (E.D. Pa. 1991). In evaluating such claims, this court applies "the familiar Title VII framework." *Runion v. Equip. Transp., LLC*, No. 1:15-CV-2159, 2017 WL 3839917, at *3 (M.D. Pa. Sept. 1, 2017) (citing *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009)).

Here, Defendant moves for summary judgments on three grounds.[6] First, Defendant claims it did not terminate Plaintiff; he quit when he filed for benefits. Second, Defendant argues, assuming Plaintiff was fired, there is no evidence of retaliatory intent. And third, Defendant moves for summary judgment on causation,

---

[6] The court takes note of Defendant's argument that Plaintiff's separate workers' compensation lawsuit cannot be relitigated here but does not find this requires an order or large discussion. The court also does not address Defendant's arguments concerning Plaintiff's wife's claim as the court has already granted Defendant's 12(b)(6) motion to dismiss that claim.

8

essentially arguing Plaintiff's damages were caused by his injury and him failing to report his retirement fund withdrawals to the IRS, not his being fired. The court addresses each issue in turn.

Regarding the first issue, the court finds there is a fact issue on whether Defendant terminated Plaintiff. Notably, the document from Defendant's HR department marking Plaintiff's "Termination" date as December 5, 2015, constitutes direct evidence that Defendant terminated Plaintiff. In fact, that the Contractors Plan interpreted Defendant's statement the same way, recording Mr. Walker's "Termination" date as December 5, 2015, after receiving the letter. The specified termination date also constitutes circumstantial evidence that Defendant fired Mr. Walker. December 5, 2015, is the day after Mr. Walker's meeting with the Co-owners, where he believes they fired him. While Defendant has introduced some evidence showing it did not intend to terminate Mr. Walker, and that his actions could be construed as him quitting, this is merely contradictory evidence that a factfinder should properly resolve. *See Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) ("In reviewing [] a motion for summary judgment, we [] resolve conflicting evidence in favor of the nonmovant.").

Regarding the second issue, there is ample evidence from which a reasonable factfinder could infer retaliatory intent on Defendant's part. During a meeting on December 4, 2015, between Plaintiff and the Co-owners, Mr. Wantz heavily implied

9

the company intended to fire him if he filed for workers' compensation. This was consistent with a 2013 conversation Ms. Formby had with Mr. Wantz, where he explicitly stated that the company could not afford to keep people, like Mr. Walker, around who were on workers' compensation, that "these people" are "ridiculous," and that he would terminate Mr. Walker if he filed for workers' compensation. Moreover, the fact that Defendant's HR letter designated Mr. Walker's "Termination" date as December 5, 2015—the day after this meeting—is strong circumstantial evidence from which a juror could infer the company did, in fact, terminate him for preparing to file for workers' compensation. *Cf. Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) ("Skrjanc presented a prima facie case of retaliatory discharge by showing that [] he availed himself of a protected right under the FMLA by notifying [his employer] of his intent to take leave."). Defendant has also put forward no alternative, non-retaliatory explanation for why it terminated Mr. Walker—it has, instead, taken the position that he quit. Thus, at this stage, applying the Title VII framework, Plaintiff need only make out a prima facie case of retaliatory intent. He has presented sufficient evidence to do so.

Turning to the third issue, the court begins by noting Plaintiff does not discuss causation at all in its response brief. Nor does Defendant cite any authority on the

proper causation standard here. The parties have thus left the court in the position of ferreting out the facts and law entirely on its own.

As the Pennsylvania Supreme Court has previously explained:

> We have become a nation of employees. We are dependent upon others for our means of livelihood, and most of our people have become completely dependent upon wages. If they lose their jobs they lose every resource, except for the relief supplied by the various forms of social security. Such dependence of the mass of the people upon others for All of their income is something new in the world. For our generation, the substance of life is in another man's hands.

*Geary v. U.S. Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974) (internal quotations omitted). Thus, losing one's job presumptively means one has lost their wages, entitling them to damages. As such, courts ordinarily do not evaluate harm causation in the wrongful termination context. Instead, they tend to discuss the plaintiff's need to prove "a causal link exist[ing] between the protective activity and the adverse employment action." *Theriault*, 336 F. App'x at 175; *see also Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 517 (Pa. 2005) (discussing causation in the context of whether plaintiff's protected "activity was a substantial factor in [the employer's] decision to fire him").

Here, Mr. Walker's injuries have unfortunately permanently deprived him of the ability to perform the job he lost. He therefore cannot claim that, absent his allegedly wrongful termination, he would have continued to perform the same work

11

and earn the same wages. Thus, in contrast to typical wrongful termination plaintiffs, he can only survive summary judgment by showing some more specific way he suffered harm from being terminated.

"The elements of the public policy [retaliatory termination] claim are essentially adaptations of the elements in tort claims generally, requiring both causation of harm and fault on the part of the employer that would tend to undermine public policy." Dan D. Dobbs, Paul T. Hayrden, and Ellen M. Bublick, *The Law of Torts* § 703 (2d ed. 2019). Indeed, in a recently issued opinion, the Pennsylvania Superior Court discussed the scope of damages available to a wrongful discharge plaintiff and cited the general common law principles for causation and harm, stating "the purpose of damages is to compensate victims to the full extent of the loss sustained as a direct result of the injury." *Carlini v. Glenn O. Hawbaker, Inc.*, --- A.3d ----, 2019 WL 4385683, at *10 (Pa. Super. Ct. Sept. 13, 2019) (internal quotations omitted).

"In determining the appropriate measure of damages in a wrongful termination context," Pennsylvania courts "look at the type of damages recoverable for the intentional interference with the performance of a contract." *Kilpatrick v. Del. Cty. Soc. For Prevention of Cruelty to Animals*, 632 F. Supp. 542, 550 (E.D. Pa. 1986); *accord Carlini*, 2019 WL 4385683 at *10 n.10 ("[T]he factors which should be weighed when evaluating a claim for wrongful termination [are] identical

to the factors considered relevant to a claim of intentional interference with the performance of a contract.") (internal quotations omitted); *Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*, 422 A.2d 611, 618 (Pa. Super. Ct. 1980)[7] (same); *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 901 (3d Cir. 1983) (same). "The purpose of a damage award is to place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach." *Helpin v. Trustees of Univ. of Pa.*, 10 A.3d 267, 270 (Pa. 2010) (internal quotations omitted). With this framework in mind, the court turns to the different types of harm Plaintiff alleges he has suffered and evaluates whether he can prove those harms are traceable to Defendant's conduct.

Here, Plaintiff alleges four categories of damages in his complaint. First, he complains that "[w]hile Plaintiff Walker was unable to work and undergoing treatment, Plaintiffs were forced to liquidate retirement savings" resulting in his "suffer[ing] penalties and tax payments triggered by the liquidation of Plaintiff Walker's 401(k) plan and Plaintiff Formby's 401(k) plan." (Doc. 1, ¶ 27(a).) Second, he complains that he was "able to return to light-duty as of August 2017" but "having been discharged illegally by Defendant, Plaintiff Walker is unable to obtain employment in his area of expertise with reasonable accommodations and has

---

[7] The Pennsylvania Supreme Court has rejected the discussion of liability in *Yaindl* but made no comment on its discussion of causation and damages. *See Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 n.11 (Pa. 2011).

thus suffered loss of earnings." (*Id.* ¶ 27(b).)  Third, Plaintiff claims he "suffered embarrassment, shame, and mental anguish relating to his termination and inability to obtain gainful employment." (*Id.* ¶ 27(c).)  Fourth, Plaintiff seeks punitive damages. (*Id.* ¶¶ 28-31.)  The court addresses each category in turn.

Regarding the first category of damages, there seem to be two sub-components: the liquidation of retirement savings itself and penalties incurred in doing so.  Regarding the liquidation of the retirement savings, Plaintiff admits a key fact: this money was withdrawn "[w]hile Plaintiff Walker was unable to work."  Plaintiff has pointed to no evidence in the record suggesting he was contractually entitled to a regular wage from Defendant when he was not working.  The court thus agrees with Defendant that the only reasonable inference from the record is that Plaintiff made early withdraws from his retirement accounts because his injury prevented him from working, not because he was unfairly terminated.  Regarding the penalties, both parties agree that "[a]ny penalties or interest for those funds resulted . . . from Plaintiffs' failure to report the income." (Doc. 20, ¶¶ 56-59 (Defendant stating these facts); Doc. 22, ¶¶ 56-59 (Plaintiff admitting they are undisputed.)  The court will thus grant summary judgment concerning causation of Plaintiff's first category of damages.

In turning to the second category of damages, the court begins with Pennsylvania's case law concerning lost wages.  As is axiomatic, "[l]oss of future

14

earnings, if proven, is properly included in a damage award." *Helpin*, 10 A.3d at 270 (internal citations omitted). In evaluating causation of lost wages, one Pennsylvania Superior Court case stated "the extent of [plaintiff's] damages would include lost income for the 'reasonable time' [plaintiff] would have worked in a new, reassigned position." *Robertson v. Atlantic Richfield Petroleum Prods. Co.*, 537 A.2d 814, 823 (Pa. Super. Ct. 1987).[8] In *Rodriguez v. Taylor*, the United States Court of Appeals for the Third Circuit discussed the proper measure of back pay damages for a person unlawfully fired due to age discrimination. 569 F.2d 1231, 1238 (3d Cir. 1977).[9] The court explained:

> A substantive rule requiring recipients of back pay to have been able to satisfy all prior job qualifications except unlawful age standard is consistent with commonly understood meanings of make whole relief and but for causation. If an applicant would not have been hired because of a legitimate disqualification, then any lost wages are not properly attributable to unlawful age discrimination.

*Id.* "This is consistent with the 'make-whole relief objective' . . . It precludes a plaintiff from being placed in a better position than would have existed in the absence of any unlawful discrimination." *Anderson v. Consolidated Rail Corp.*, No.

---

[8]  The *Robertson* court came to this framework because the parties agreed on it. The court nonetheless finds it to be a logical and persuasive framework here, consistent with other Pennsylvania case law concerning lost wages causation.

[9]  In *Kunda v. Muhlenberg College*, 621 F.2d 532, 543 n.3 (3d Cir. 1980), the Third Circuit held that a footnote in *Rodriguez* was incorrect dicta but suggested *Kunda*'s discussion concerning "the appropriate relief to be awarded" to a discrimination plaintiff was correct.

98-cv-6043, 2000 WL 1622863, at *2 (E.D. Pa. Oct. 25, 2000) (citing *Rodriguez*, 569 F.2d at 1243); *see also Dougherty v. Sch. Dist. of Phila.*, No. 12-cv-1001, 2015 WL 2365600, at *8 (E.D. Pa. May 18, 2015) (holding that the appropriate measure of damages for an employee who was fired for expressing his first amendment rights was the "amount [that] puts [plaintiff] in the position he would have occupied had he not engaged in protected activity").

Applying this framework here, Mr. Walker is only entitled to the lost wages he would have acquired in the hypothetical scenario where he was not wrongfully terminated. Plaintiff admits his injuries deprived him of the ability to perform many of the functions of his previous job with Defendant. Thus, he cannot show he was "able to satisfy all prior job qualifications except" for having filed for workers' compensation. *Rodriguez*, 569 F.2d at 1238.

Plaintiff addresses this problem by implicitly arguing Defendant was legally obligated to offer him "light work"—from which he could have earned wages. Defendant responds by arguing that it is not legally obligated to offer any light work to Plaintiff. The court thus examines the applicable law governing an employer's obligations to provide work for a disabled employee and assesses whether this provides a basis for Plaintiff to recover lost wages.

Under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), an employer is generally obligated to continue

16

providing employment to a disabled employee as long as "he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." *See Stultz v. Reese Bros., Inc.*, 835 A.2d 754, 759-60 (Pa. Super. Ct. 2003) (quoting *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)). The employer, however, can escape its obligation to provide reasonable accommodations if it "can demonstrate 'that the accommodation would impose an undue hardship on the operation' of their business." *Zieba v. Showboat Marina Casino P'ship*, 361 F. Supp. 2d 838, 841, 844 (N.D. Ind. 2005) (quoting 42 U.S.C. § 12112(b)(5)(A)).

The court assumes, *arguendo*, that Plaintiff's claim that he can perform light work amounts to his being able to perform his job with reasonable accommodations. Thus, Monacacy was arguably obligated to provide him with light work. But Plaintiff has not pleaded an ADA violation. He has only pleaded a wrongful termination claim. It would prejudice Defendant to defend against such an unpleaded claim. In *Holmes Group, Incorporated v. RPS Products, Incorporated*, the United States District of Massachusetts granted a defendant's motion to strike portions of the plaintiff's summary judgment briefing concerning an unpleaded bad faith insurer claim, in part because, had the claim been pleaded, the defendant could have "asserted a number of procedural and substantive defenses that are specific to [bad faith] claims." 424 F. Supp. 2d 271, 295-96 (D. Mass. 2006); *accord El Sereno,*

17

*LLC v. City of Garland*, No. 3:09-CV-0556, 2010 WL 1741334, at *1 n.5 (N.D. Tex. Apr. 29, 2010) (declining to permit plaintiff to survive summary judgment "based on claims that had not been asserted as of the time the motion was filed"). Similarly here, had Defendant known an ADA claim was being brought against it, it may have prepared an undue burden defense under 42 U.S.C. § 12112(b)(5)(A). The court thus will not read separate statutory claims into Plaintiff's common law wrongful termination claim.[10]

Alternatively, Plaintiff's lost wages claim may survive if there is any evidence that he suffered "injury to his reputation in the industry" such that he was deprived of other jobs he could have taken. *Geary*, 319 A.2d at 175. Here, Plaintiff suggests his inability to acquire a job now is attributable to him being fired. But Plaintiff has no evidence showing a prospective employer refused to hire him because of his being terminated by Monacacy. Thus, based on the current record before the court, no reasonable person could find Plaintiff suffered lost wages attributable to his being terminated.

Turning to the third category of damages, the court's resolution of Plaintiff's pecuniary damages claims also disposes of his emotional distress damages. "[T]he

---

[10] Even if the court read an ADA claim into Plaintiff's complaint, he admitted, in his deposition testimony, that he never requested light work from Defendant. He thus lacks an essential element of an ADA claim. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (holding an ADA failure-to-accommodate claim requires evidence that the employee "requested an accommodation or assistance") (internal quotations omitted).

18

victim of a wrongful discharge is entitled to recover damages for emotional distress that can be reasonably expected to result from the wrongful discharge." *Carlini*, 2019 WL 4385683 at *11 (citing *Kilpatrick*, 632 F. Supp. at 550; Restatement (Second) of Torts § 905 cmt. a). As stated above, Pennsylvania law governing wrongful termination and intentional interference claims is the same. *See id.*; *Kilpatrick*, 632 F. Supp. at 550; *Yaindl*, 422 A.2d at 618; *Novosel*, 721 F.2d at 901. Pennsylvania courts have held that, absent a showing of direct pecuniary loss, an intentional interference plaintiff cannot solely recover emotional distress damages. *See Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa. Super. Ct. 1998) ("[T]hough non-pecuniary harms are recoverable in an intentional interference action, such an action cannot be maintained in the absence of pecuniary loss flowing from the interference."); *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987) (same); *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 898 (3d Cir. 1981) (same), *abrogated on other grounds by Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 66-68 (1982).[11] Without proof that he lost money because of being wrongfully terminated, Plaintiff cannot go forward solely seeking emotional distress damages.

---

[11] *Carlini* contains a line that appears to contradict the court's statement here today. 2019 WL 4385683 at *10 ("Compensatory damages that may be awarded without proof of pecuniary loss include compensation … for emotional distress.") (quoting Restatement (Second) of Torts § 905) (1975)). But that section of the Restatement merely makes clear that a party does not have to show its emotional distress directly caused pecuniary loss; they can instead recover damages meant to compensate them directly for their emotional harm. *See Gallagher v. Upper Darby T'ship*, 539 A.2d 463, 465 (Pa. Commw. Ct. 1988); *Richardson v. Knud Hansen Memorial Hosp.*, 744 F.2d 1007, 1013 (3d Cir. 1984). It therefore does not address the question of whether an

Turning to Plaintiff's final category of damages, the court finds they survive summary judgment. "Pennsylvania law permits punitive damages to be awarded even where there are no compensatory damages because the purpose of punitive damages is to punish and deter the defendant, rather than make the plaintiff whole." *Welcker v. Smithkline Beckman*, 746 F. Supp. 576, 580 (E.D. Pa. 1990); *accord Keck v. Commercial Union Ins. Co.*, 758 F. Supp. 1034, 1040 (M.D. Pa. 1991) (adopting *Welcker*'s discussion re: punitive damages in the wrongful discharge context). Thus, despite being unable to prove compensatory damages, Plaintiff will still be permitted, at trial, to seek punitive damages against Defendant.

## IV. **Conclusion**

For the reasons stated above, the court shall grant the motion for summary judgment on causation in part, dismissing all of Plaintiff's damages claims other than punitive damages. The court shall deny the motion on all other bases. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 14, 2020

---

intentional interference plaintiff—and thus, by extension, a wrongful termination plaintiff—must prove economic damages before the question of noneconomic damages can be reached. Indeed, while the *Carlini* court held the plaintiff was entitled to a jury instruction on noneconomic damages, this may have been because "the jury awarded economic damages (lost wages and benefits)." 2019 WL 4385683 at *2.